[No. 41382-1-I.   Division One.   January 25, 1999.]

SEATTLE PUMP COMPANY, INC., *Appellant*, v. TRADERS AND GENERAL INSURANCE COMPANY, *Respondent*.

*Thomas B. Owens* of *Treece, Richdale, Malone, Corning & Abbott, P.S.*, for appellant.

*Mark P. Scheer* and *Sheree Carson* of *Lane Powell Spears Lubersky, L.L.P.*, for respondent.

ELLINGTON, J. — Seattle Pump Company's insurance policy was cancelled by its attorney in fact. We hold that the insurer did not have an obligation to reinstate the policy to cover a loss incurred after cancellation.

## Facts

Seattle Pump Company procured a commercial property insurance policy from Traders and General Insurance Co., a division of Houston General Companies.[1] Seattle Pump financed the policy with Premium Financing Specialists (PFS). Pursuant to the financing agreement, PFS was Se-

---

[1]Traders and General refers to itself in this appeal as "Houston General." We will refer to it as Houston General.

attle Pump's attorney-in-fact and had full authority to cancel the policy with Houston General if Seattle Pump defaulted.[2] The agreement also provided that PFS was not obligated to request reinstatement of the policy, and that "[o]nly the insurance company has the authority to reinstate the policy."

Seattle Pump fell behind in its monthly installment payments under the financing agreement. The March 31, 1995 payment was not timely made, and on April 6, 1995, PFS issued a notice of intent to cancel the policy. On April 27, 1995, PFS still had not received Seattle Pump's payment, and issued a notice of cancellation effective April 29, 1995. Houston General received PFS's notice of cancellation on May 1, 1995.

According to the president of Seattle Pump, the company mailed its March 31 payment on April 25, 1995. PFS received the March payment on May 1, 1995. By that date, Seattle Pump's April 30 payment was delinquent.

On May 4, 1995, Seattle Pump suffered a loss that would have been covered had the policy been in effect. Houston General received notice of the loss on May 4, 1995. Its independent adjuster completed an inspection of the property on May 8, 1995. On either May 5 or 8, Houston General contacted PFS to inquire as to the status of Seattle Pump's policy. PFS reported that the policy had not been reinstated. On the same date, PFS mailed a letter to Houston General reiterating the cancellation and requesting a refund of the unearned portion of the premium it had paid. On May 10, 1995, Houston General notified Seattle Pump that coverage for the loss had been denied due to cancellation of the policy.

On May 11, 1995, Houston General received a request for reinstatement from PFS. In the request, PFS stated that it had received Seattle Pump's April 30 payment on May 9, 1995 and requested reinstatement on the same date.

---

[2]The financing agreement required PFS to give notice of intent to cancel before canceling; it is undisputed that PFS met this requirement. PFS was not a party to this suit.

By letter dated May 16, 1995, Houston General notified PFS that the April 29, 1995 cancellation would remain in effect. The letter states, "We have already processed [the cancellation], and you will receive your return premium shortly."

Seattle Pump filed suit against Houston General for breach of contract and violation of the Consumer Protection Act (CPA), RCW 19.86. Its complaint alleged that Houston General was estopped from denying reinstatement, and that Houston General's practice of reinstating and backdating policies only when no loss occurred during the lapse period violated the CPA.

Houston General filed a motion for summary judgment. After addressing some discovery issues, the court ordered that for purposes of summary judgment, it would be presumed that Houston General " 'backdated' late payments for other insureds where no loss occurred in the interim." The court granted Houston General's motion for summary judgment.

## Discussion

### Standard of Review

This court's review of the grant of a motion for summary judgment is de novo, with the facts considered in the light most favorable to the nonmoving party. *Reynolds v. Farmers Ins. Co.*, 90 Wn. App. 880, 884, 960 P.2d 432 (1998). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions on file, and the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).

### Denial of coverage

Seattle Pump's loss occurred on May 4, 1995. PFS's cancellation of Seattle Pump's policy was effective April 29, 1995. Thus, at the time of the loss, no policy was in effect.

Similar facts were presented in *Illinois Insurance*

*Guaranty Fund v. Evanston Paper & Paper Shredding Co.*,
272 Ill. App. 3d 405, 208 Ill. Dec. 512, 649 N.E.2d 568
(1995), except in that case, the premium financing company
wrongfully cancelled the insured's policy. In finding that
the insurer's successor in interest had no liability to cover
a loss that occurred after the effective date of the cancella-
tion, the court noted that even though the financing
company had acted wrongfully in canceling the policy, the
insurer properly relied on the company's authority as the
insured's attorney in fact and cancelled the contract. Thus,
because the insurer had not reinstated coverage by the
time of the loss, no policy covered the loss and the insurer's
successor in interest was not liable. *Illinois Ins. Guar. Fund*,
649 N.E.2d at 571.

The same reasoning applies here. Under the financing
agreement, PFS was Seattle Pump's attorney-in-fact with
full authority to cancel Seattle Pump's policy upon the lat-
ter's default. When Seattle Pump failed to make its pay-
ment under the agreement, PFS timely issued a notice of
intent to cancel the policy as required under the agree-
ment. It then issued a notice of cancellation in accordance
with the agreement. Seattle Pump does not dispute its
default. In essence, Seattle Pump cancelled its own policy.
Seattle Pump thus had no grounds upon which to chal-
lenge the cancellation.

As leading insurance commentators have observed,
"Where an insured executes a promissory note to a finance
company for insurance premiums which authorizes the
company to cancel the insurance . . . upon default of pay-
ment, the insured is in no position to complain when the
finance company cancels the policy in accordance with the
agreement." 2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON
INSURANCE 3D § 31:43 at 31-56 (3d ed. 1995). Russ and Seg-
alla also note that the right to notice of cancellation is "a
prime example of a right forfeited by an insured when a
third party is interjected into the insurer/insured relation-
ship."

█ Seattle Pump argues, however, that under the
doctrines of equitable estoppel and election, it was entitled

to retroactive reinstatement of the policy. The leading case in Washington regarding equitable estoppel as applied to insurance companies is *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 779 P.2d 249 (1989). The elements of equitable estoppel are: (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of this admission, statement, or act; (3) injury to such other party resulting from allowing the first party to contradict or repudiate the admission, statement, or act. *Saunders*, at 340. The court in *Saunders* recognized that, under appropriate circumstances, an insurer may be equitably estopped to deny reinstatement and backdating of a policy upon receipt of an insured's late payment. In order for equitable estoppel to apply, however, there must be an established course of dealing between the parties such that the insured may justifiably rely on the insurer's practice of accepting late payments and backdating coverage without notifying the insured of any gap in coverage or providing a refund. *Id.* at 342-43.

Here, the record contains no evidence whatsoever of an established course of conduct between Seattle Pump and Houston General pursuant to which Seattle Pump could justifiably rely on Houston General to reinstate and backdate a policy that PFS had cancelled. Indeed, counsel for Seattle Pump conceded at oral argument that Seattle Pump had not detrimentally relied on an established course of dealing. Thus, the doctrine of equitable estoppel does not compel Houston General to reinstate and backdate Seattle Pump's policy to cover the loss.

■ Nor does the doctrine of election help Seattle Pump here. The doctrine of election can require an insurer to renew a lapsed policy where it accepts a late renewal payment and subsequently discovers a claim for an accident occurring before the premium was tendered. *Saunders*, 113 Wn.2d at 338. Under the doctrine of election, "[w]here the insurer has accepted such late payments for more than 1 year, it is put to an election: it must treat all late payments

750

the same." *Saunders*, at 338. Thus, the doctrine applies when an insurer "routinely appl[ies] premiums to the period that precedes the date for which the late premiums were received." ROBERT E. KEETON & ALAN I. WIDISS, INSURANCE LAW § 6.8(c)(3) at 720 (1988) (quoted in *Saunders*, 113 Wn.2d at 339).

Such is not the situation before us. There is nothing in the record to indicate that Seattle Pump ever allowed its policy to lapse and be cancelled prior to the April 29 cancellation. Rather, it appears that Seattle Pump submitted delinquent payments to PFS before the effective date of cancellation listed in PFS's notice of intent to cancel. The insurer was not involved and the policy never lapsed for nonpayment. The doctrine of election does not apply in the absence of retroactive reinstatement of lapsed policies.

■ Moreover, whether the doctrine of election is applicable is determined by analyzing an insurer's conduct with respect to the particular insured who seeks to invoke the doctrine. The relevant inquiry is whether the insurer regularly accepted that particular insured's late payments for more than a year. The insurer's conduct with respect to other insureds is not relevant to a determination of whether the doctrine of election compels the insurer to accept late payments from one particular insured. In the absence of evidence that Houston General regularly accepted Seattle Pump's late renewal payments and reinstated lapsed policies, the doctrine of election does not apply to compel reinstatement and backdating.

Seattle Pump also relies on *Ryman v. American Nat'l Ins. Co.*, 5 Cal. 3d 620, 488 P.2d 32, 96 Cal. Rptr. 728 (1971), as support for its argument that Houston General was precluded from denying reinstatement. At issue in *Ryman* was coverage under a family major medical expense policy. The policy lapsed on October 18, 1966 because the insureds failed to pay the premium within the grace period. On October 31, the insureds sent the overdue payment. The insurer accepted payment without issuing a notice that the acceptance was conditioned on the insureds' taking further

action. On November 8, the insurer mailed the insureds a notice of lapse indicating that the policy would be considered for reinstatement if the insureds completed an application and tendered the amount of the premium due. On November 10, the insureds notified the insurer by letter that they had sent payment on October 31. The next day, both insureds were seriously injured in an automobile accident. In January, the insurer returned the insureds' overdue payment, and in March, it denied coverage for medical expenses resulting from the accident.

The Supreme Court of California held that the policy was in effect at the time of the loss. One of the two grounds for the court's holding was that the insureds had applied for reinstatement on October 31 by tendering full payment of the overdue premium. Because they were fully insurable at that time, they were entitled to reinstatement and could not be denied coverage on the basis of their subsequent accident. Because the insureds' tendering of the full premium amount constituted an application for reinstatement, because the insurer had no grounds upon which to refuse reinstatement, and because the insurer had accepted the tendered premium, the court in *Ryman* determined that there should have been a policy in effect on November 11, the date of the accident.

Here, by contrast, Seattle Pump did not, and in fact could not, apply for reinstatement with Houston General. PFS was Seattle Pump's attorney-in-fact under the financing agreement, and was responsible for seeking reinstatement. Consistent with the contract it had with Seattle Pump, PFS did not seek reinstatement until May 9, five days after the May 4 loss. Thus, unlike the insureds in *Ryman*, Seattle Pump was not entitled to reinstatement before the date of the loss. Its loss could be covered only if the policy were backdated. The issue of backdating did not arise and was not addressed in *Ryman* because the loss occurred during the time the policy should have been in effect. Thus, *Ryman* does not support Seattle Pump's position.

■ We conclude that summary judgment in favor of

Houston General on the contract claim was properly entered. The fact that Houston General backdates and reinstates policies for insureds who do not suffer losses while their policy is lapsed is of no moment. Even if evidence regarding Houston General's conduct towards other insureds were relevant to Seattle Pump's equitable estoppel claim, there is no evidence in the record that Seattle Pump relied on, or even knew of, Houston General's practice with respect to any other insured.

Consumer Protection Act

■ Insurers must act with good faith in their conduct of the business of insurance. RCW 48.01.030. Breach of this duty of good faith can be a violation of the CPA, which declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. An insured may bring a private action against an insurer under the CPA for breach of the duty of good faith. RCW 19.86.090; *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 149, 930 P.2d 288 (1997). To prevail in such an action, a plaintiff must establish:

> (1) the defendant has engaged in an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) the plaintiff has suffered injury in his or her business or property, and (5) a causal link exists between the unfair or deceptive act and the injury suffered.

*Leingang*, 131 Wn.2d at 149. "[W]hether a particular action gives rise to a Consumer Protection Act violation is reviewable as a question of law." *Id.* at 150.

Seattle Pump argues that Houston General breached its duty of good faith, and thereby violated the CPA, by (1) denying its claim and (2) maintaining a practice of backdating and reinstating policies only where the insured did not

suffer a loss during the period when the policy had lapsed.[3] We disagree.

■ ■ An insurer's reasonable denial of coverage does not constitute an unfair practice prohibited by the CPA. *Estate of Hall v. HAPO Fed. Credit Union*, 73 Wn. App. 359, 366, 869 P.2d 116, *review denied*, 124 Wn.2d 1026 (1994). "Acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the [CPA]." *Leingang*, 131 Wn.2d at 155.

■ An insurer's denial of coverage on the ground that the policy was cancelled prior to the loss is not unreasonable. At the time it denied Seattle Pump's claim, Houston General had been notified by PFS, which had full authority to cancel upon default, that the policy had been cancelled. Thus, there was no policy in effect on the date of the loss. Houston General's denial of coverage for the loss was therefore reasonable and did not constitute a violation of the CPA.

■ The second alleged violation of the CPA is Houston General's practice of determining whether to reinstate and backdate cancelled policies with premium finance companies based upon whether the insured suffered a loss during the lapse period. We find nothing unfair or illusory about this practice. Risk assessment is an integral part of the business of insurance. An insurer's decision whether to retroactively reinstate a policy that has been cancelled will always involve consideration of whether a loss occurred during the lapse period.

Only where the course of dealing between the parties requires it does an obligation arise to cover what would otherwise not be covered. *See Saunders*, 113 Wn.2d at 339. No such course of dealing is evident here. Houston General's practice as applied to Seattle Pump does not violate the CPA.

---

[3]The trial court presumed for purposes of summary judgment that Houston General follows this practice. Houston General does not dispute that it determines whether to reinstate and backdate a lapsed policy based on whether the insured suffered an otherwise covered loss during the lapse period.

The trial court's order entering summary judgment in favor of Houston General is affirmed.

WEBSTER and BAKER, JJ., concur.