AMELIA M. GRAHAM AND E. LOUISE KINNE, DEFENDANTS
IN ERROR, v. THE SECURITY MUTUAL LIFE INSUR-
ANCE COMPANY, PLAINTIFF IN ERROR.

Argued March 21st, 1905—Decided November 20th, 1905.

1. An insurance company may waive any condition of a policy in-
   serted therein for its own benefit.
2. Forfeitures are not favored in the law, and courts are always
   prompt to seize hold of any circumstances to indicate an election
   to waive a forfeiture, or an agreement to do so, on which the party
   has relied and acted.
3. It is always open on behalf of the insured to show a waiver of
   the conditions, or a course of conduct on the part of the insurer
   from which might be justly and reasonably inferred that a for-
   feiture would not be exacted.

On error to the Supreme Court.

This was an action brought on a policy of life insurance pro-
viding for the payment to the plaintiff of $10,000 upon
receipt of satisfactory proofs of the death of the insured,
Theodore Y. Kinne. At the trial at the Passaic Circuit,
before Mr. Justice Pitney and a jury, he denied the defend-
ant's motion to nonsuit, and on due submission of the case
to the jury a verdict was rendered in favor of the plaintiff
for $9,951.30.

The policy was issued on or about November 16th, 1903,
and bore date August 17th, 1903. The first annual premium
thereon amounted to $429.60. It was paid in part by a credit
of $97.90, the amount of the unearned premium on a policy
previously held by the insured, and surrendered and canceled
when the present policy was issued, and by the execution and
delivery of the following note:

"PATERSON, N. J., 11–10–1903.

"$331.76.

"On February 15th, 1904, after date, I promise to pay to
the order of Security Life Insurance Company three hundred

and thirty-one $^{76}/_{100}$ dollars, payable at H. O., value received, with interest at six per cent. per annum. This note is given in payment of premium.

"(Signed) THEODORE Y. KINNE."

On the 5th day of February, 1904, the following letter was sent to the insured from the home office of the company:

"BINGHAMTON, N. Y., Feb. 5th, 1904.

"DEAR SIR—Your note dated November 10th, 1903, for $331.76, with interest amounting to $5.19, will fall due on the 15th day of February, 1904, payable to Mr. C. Merwin Turner, 140 Times Bld., New York City. Kindly give the matter your prompt attention and send check at once. It is never safe to delay until the last day.

"Very truly yours,

"L. E. TURNER."

The insured, on February 15th, 1904, wrote and sent the following letter:

"FEBRUARY 15TH, 1904.

*"Charles M. Turner, Sec. M. Life Ins. Co., 41 Park Row, N. Y.:*

"DEAR SIR—On opening this letter you will be as much disappointed as I by not finding a check contained. Certainly your disappointment cannot be greater. It is almost impossible to make collections of any amount here, and I must ask either extension, suspension or the privilege of paying a part now and the balance next month.

"Yours very truly,

"THEO. Y. KINNE.

"P."

On the following day, the following letter was written by C. Merwin Turner to the insured:

"NEW YORK, N. Y., Feb. 16th, 1904.

"*Theo. Y. Kinne, M.D., Paterson, N. J.:*

"DEAR DOCTOR—Your esteemed communication of the 15th to hand and contents carefully noted.

"If you will forward your check for part of the amount I will arrange for the extension of the balance, and in order to save time kindly sign the enclosed note and we will credit you with the amount of your check.

"I regret exceedingly that collections in your line are poor, but have heard other physicians make the same remark. Trusting that the condition is only momentary, I am,

"Yours very truly,

"C. MERWIN TURNER,

"*Cashier.*"

On the trial it appeared from the testimony of the secretary of Dr. Kinne that she opened the letter in the doctor's presence and there was no note enclosed, and nothing was done in reference thereto. Dr. Kinne died on March 4th, 1904.

The plaintiff then offered in evidence the following letter:

"MARCH 8TH, 1904.

"*Security Mutual Life Association, 140 Times Building, New York, N. Y.:*

"GENTLEMEN—March 4th, 1904, Dr. T. Y. Kinne, of Paterson, N. J., died. Among his insurance policies we find one written by your company. Kindly send us papers for proof of death, and oblige.

"(Signed) MRS. T. Y. KINNE,

"*Ex. T. Y. Kinne Est.*"

Demand at the trial being made for the original of this letter it was not produced, counsel for the insurance company stating that they had never received such a letter as that.

On the 11th of March, 1904, the following letter was written:

"New York, N. Y., Mch. 11th, 1904.

"*Dr. Theo. Y. Kinne, 25 Church St., Paterson, N. J.:*

"My Dear Doctor—Your note of $331.76 is due on the 15th, with $5.19 interest, making a total of $336.95. Kindly give this matter your attention.

"Yours truly,

"C. Merwin Turner,

"*Cashier.*"

Subsequently, and on the 14th of March, 1904, Thomas P. Graham, the husband of one of the plaintiffs, went to the office of the company in New York, saw Mr. Turner, and told him he was ready to pay the note. Turner did not seem to know whether the doctor was dead or not; Graham then told him that the doctor died on the 4th of March; Turner said he was sorry, as the doctor was one of their "star" insurers and their medical examiner at one time. He added, "I am sorry there is going to be any question about it, as I do not know whether we shall pay this claim or not; I shall have to communicate with the home office." On the following day Mr. Graham went back to the office and made a tender of the amount of the note to a young lady who stood behind the cashier's desk, who declined to receive it, because she had been instructed not to accept it. On the same day Mr. Graham offered to pay $336.95 to the defendant at its home office, through the Western Union telegraph, and defendant refused to accept the money.

To each of the letters above mentioned a stipulation was annexed in the same terms as the following:

"It is hereby consented and agreed by and between the attorneys of the respective parties hereto, that the letter hereto annexed, dated March 11th, 1904, to Dr. Theodore Y. Kinne, signed by C. Merwin Turner, cashier, is the original written by C. Merwin Turner, cashier of the defendant, on behalf of the defendant, and that on the trial of the above action it is agreed by said attorneys that said letter shall be received in evidence without proof of the signature or agency of said C. Merwin Turner, cashier."

For the plaintiff in error, *Eugene Emley* (*Horton & Tilton,* on the brief).

For the defendants in error, *Griggs & Harding.*

The opinion of the court was delivered by

VROOM, J.    The assignments of error are six in number, the first being to the refusal of the court to grant the motion for a nonsuit at the close of the plaintiff's case, and the remaining assignments were based upon the charge of the judge.

The first assignment was principally relied upon by the plaintiff in error in the presentation of the case before this court. It was as follows: "That at the close of the plaintiff's case the court before whom * * * refused to grant this motion for a nonsuit made by the said defendant upon the ground that the policy of insurance sued upon was not any longer in force, and that the said defendant was no longer legally liable under its terms, said policy having been forfeited in the lifetime of the insured, and upon the further ground that there was no evidence of a legal tender of the premium due thereon."

In support of this position reliance is had upon condition 4 annexed to the policy of insurance, and which reads as follows: "Failure to pay any renewal premium, or non-payment [when due] of principal or interest on any note given in payment of a premium due under or as a charge against this contract, or any breach of warranty discovered within two years from this date, will render it null and void, and all payments theretofore made thereunder will be forfeited to the company." And the contention thereunder was that the failure to pay the note when due rendered the policy, under the terms of the contract, absolutely null and void; that there was no longer any legal liability on the part of the defendant, and that the insurance upon the life of the deceased had then lapsed and the rights of the latter under the policy were then forfeited and gone.

The correctness of this position as a general rule relating to forfeitures of policies, and which is held in the cases cited in this part of the brief of the plaintiff in error, will not be disputed. *Knickerbocker Life Insurance Co.* v. *Pendleton,* 112 *N. Y.* 696; *Thompson* v. *Knickerbocker Life Insurance Co.,* 104 *U. S.* 765; *Pitts* v. *Berkshire Insurance Co.,* 100 *Mass.* 530.

But the facts of this case preclude the application of this strict rule as to forfeiture to this case. The contention of the defendants in error is that there had been a waiver of the forfeiture clause in this policy, and that the question whether all the acts of the defendant and the insured, occurring at different times, did not go to make up a course of dealing respecting this contract from which the waiver of strict payment of the note and forfeiture might be inferred, and that this question was one which should be left to the consideration of the jury.

It has long been a settled rule of law that the provisions of a contract that are to work a forfeiture are to be strictly construed. Forfeitures are never favored in the law, and attention was called by counsel for defendants in error to the fact that the aversion of courts to the enforcing of forfeitures is emphasized in contracts for insurance for reasons usually existing peculiar to those contracts.

An examination of the cases, and notably those upon the brief of the defendants in error, clearly demonstrates the correctness of the principle above stated.

In *Hartford Life and Annuity Co.* v. *Unsell,* 144 *U. S.* 439, it was held that "it is always open for the insured to show a waiver of the condition or a course of conduct on the part of the insurer which gave him a just and reasonable ground to infer that a forfeiture would not be exacted, and the fact that defendant, without objection, had previously received from the insured monthly dues after the date on which by the terms of the contract they were payable, was properly left to the jury to infer waiver," and "that a waiver may arise by express language or by acts from which an in-

tention to waive may be inferred, or from which a waiver follows as a legal result."

Again, in *Hastings* v. *Brooklyn Life Insurance Co.,* 138 *N. Y.* 473, a premium note which contained a provision of forfeiture in case of non-payment was not paid and a new note given; the renewal note was not paid when due, but it was held that "the act of the defendant in extending credit to the insured for premiums falling due upon the pledge of the policy established a course of dealing between the parties which it was necessary to terminate in some way before the policy could be treated as forfeited and void." In the case of *Insurance Company* v. *Horton,* 96 *U. S.* 244, the questions of waiver and forfeiture were fully discussed, and in delivering the opinion of the United States Supreme Court Mr. Justice Bradley said: "Forfeitures are not favored in the law. They are often the means of oppression and great injustice. And where adequate compensation can be made, the law, in many cases, and equity in all cases, discharged the forfeiture upon such compensation being made. It is true we held in *Statham's Case,* 93 *Id.* 24, that in life insurance time of payment is material, and cannot be extended by the courts against the assent of the company. But where such assent is given the courts should be *liberal in construing the transaction* in favor of avoiding a forfeiture."

In the case of *Insurance Company* v. *Eggleston,* 96 *U. S.* 576, 577, Mr. Justice Bradley, again speaking for the court, says: "Forfeitures are not favored in law, and courts are always prompt to seize hold of any circumstances to indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted." See, also, *Kenyan* v. *K. T. M. M. A. Ass'n,* 122 *N. Y.* 246; *Spoeri* v. *Massachusetts Mutual Life Insurance Co.,* 39 *Fed. Rep.* 732; *Meyer* v. *Knickerbocker Life Insurance Co.,* 75 *N. Y.* 516; *Church* v. *Lafayette Fire Insurance Co.,* 66 *Id.* 222.

And in this state, in the case of *State Insurance Co.* v. *Maackens,* 9 *Vroom* 564, it was held that "any conduct on the part of the company or its agent, with respect to their

liability on the policy, which may reasonably be supposed to have induced the claimant to believe that the time for deliver-ing the proofs would not be relied on by the company, is competent evidence of a waiver of strict adherence to time in the presentation of proofs." Citing *Basch* v. *Humboldt Fire Insurance Co.,* 6 *Id.* 429, and *Jones* v. *Mechanics' Insurance Co.,* 7 *Id.* 29.

There is always a reluctance on the part of courts to take from the jury, as a matter of law, any facts or circumstances from which a waiver may be inferred, and this is shown in the charge to the jury in the case of *Hartford Life Insurance Co.* v. *Unsell,* quoted in Justice Harlan's opinion in 144 *U. S.* 439 : "I do not think that any number of instances—*one* or *more*—can be said, as a matter of law, to make or not to make a waiver. It is for you, as reasonable men, to consider what the company did intend—what would its conduct make a reasonable man believe in reference to it."

What are, then, the facts and circumstances surrounding this case, and which are to be considered in determining the intent of the plaintiff in error to waive the forfeiture clause of this policy ?

The testimony showed certain facts and circumstances which were insisted upon by counsel for defendants in error as going to show the improbability of the company's intent to enforce the forfeiture against the insured. These facts were the friendly relations subsisting between Dr. Kinne and the company; that he had at one time been the medical examiner of the company and was one of their "star" insurers; that the company had his note as security for the premium, which was drawing interest at the rate of six per cent. per annum. The contention of counsel was, as stated in their brief, that "these relations between them and the improbability that the company would intend to enforce a forfeiture which would end these relations are themselves *indicia* of an intention to waive the forfeiture, if that contingency should arise." While perhaps not conclusive in establishing an intention to waive the forfeiture, still, taken in consideration with the correspond-

ence, it was a matter for the jury to consider them when determining the intention of the company.

The denial of the motion to nonsuit was put by the learned trial judge upon the correspondence between Dr. Kinne and the company, and he held that there was a construction of this evidence which would warrant the jury in finding that there had been a waiver of the forfeiture on the part of the company.

The first letter was of the date of February 5th, 1903, and was written to Dr. Kinne from Binghamton and signed L. E. Turner, the printed heading showing that he was assistant superintendent of the company. It called Dr. Kinne's attention to the fact that his note would fall due on February 15th, and would be payable to Mr. C. Merwin Turner, 140 Times Building, New York City. The letter desired the doctor to give the matter prompt attention and to send check at once, and added "it is never safe to delay until the last day;" and in commenting on this letter the trial judge said: "But the letter does not say, in terms, that non-payment before the last day, or non-payment on the last day, will work a forfeiture, and, of course, this stipulation in clause 4 [of the policy] respecting premium payments—the stipulation that non-payment when due will render the contract null and void—is intended for the benefit of the company and may be waived by the company."

This letter was from the home office of the company, and, it seems to me, can have but one construction, and that is that C. Merwin Turner was the agent of the company to receive payment and to deal with Dr. Kinne, the insured, with respect to such payment.

On the very day when the forfeiture would have taken place, in the absence of any waiver (February 15th, 1904), Dr. Kinne wrote a letter to Mr. Charles M. Turner—undoubtedly, as appears from his reply, the C. Merwin Turner referred to in the letter of February 5th—as follows:

"DEAR SIR—On opening this letter you will be as much disappointed as I, not finding a check contained. Certainly your disappointment cannot be greater. It is almost im-

possible here to make collections of any amount, and I must ask for another extension, suspension or the privilege of paying a part now and the balance next month."

This letter was promptly answered the next day (February 16th) by C. Merwin Turner. He said: "Your esteemed communication of the 15th to hand and contents carefully noted. If you will forward your check for part of the amount I will arrange for extension of the balance, and in order to save time kindly sign the enclosed note, and we will credit you with the amount of your check. I regret exceedingly that collections in your line are poor, but have heard other physicians make the same remark recently. Trusting that the condition is only momentary, I am," &c.

If upon the failure of Dr. Kinne to pay the note on February 15th no action whatever had been taken by the company or its agents, forfeiture under the clause of the policy would have taken effect; but on the day following, as seen above, the agent of the company sent the letter of February 16th, and in submitting the same to the jury the trial judge properly said: "It is for you to say whether it was not the duty of Mr. Turner to report to the company, in the ordinary course of his duty, the fact that Dr. Kinne had not made the payment strictly on the 15th of February; it is for you to say whether it is to be presumed he did so report. Now, Dr. Kinne lived from then until the 4th of March, when, according to the evidence, he died. So far as the case discloses, there was no letter subsequently received by Dr. Kinne from the agent or cashier in New York, or from the company's offices in Binghamton, insisting on the forfeiture or waiving it, but merely silence on their part, as on the doctor's part, from the 16th of February until the 4th of March."

Although in the letter of Mr. Turner of February 16th, in which he said "kindly sign the enclosed note"—inadvertently, perhaps—no note was enclosed, and nothing was done by Dr. Kinne in the way of giving a new note or check from the receipt of this letter until his death, still this fact does not in any way affect the inference against the intent of the company to enforce the forfeiture, and this clearly is shown by the

retention of the note by the company and the holding it as a personal obligation. This is further made manifest by the letter of March 11th, 1904, written after the death of Dr. Kinne by C. Merwin Turner, and addressed to Mr. Theodore Y. Kinne. This letter notifies the doctor that his note for $331.76 is due on the 15th instant, with $5.19 interest, making a total of $336.95, and desires him kindly to give this matter his attention.

While it would appear that when this letter was written Turner was unaware of the death of Dr. Kinne, nevertheless, it unmistakably shows that the company considered the note a live obligation.

The contention of plaintiff in error was that this letter contained what was termed a patent error—that the words "is due" should have been "was due"—and that the moneys represented the moneys due on the 15th of February and not on the 15th of March, but I agree with the disposition of this question made by the trial judge in refusing a nonsuit, when he said: "But whether it refers to a date before or a date to come, it has reference to the note as a live obligation, and an obligation which had reference to the keeping alive of an insurance contract in the future. This letter may be taken as evidence that before Dr. Kinne's death C. Merwin Turner had been authorized by the company to deal with that note as a live note, implying a dealing with the contract as a live contract; and it seems to me that the correspondence, taken all together, and the terms of the letter of March 11th, taken all together, also with the fact that there was an omission to enclose with the letter of February 15th (if it be so) the note that was intended to be sent with it, seems to me to leave open a construction of the evidence that would warrant the jury in finding that after the 15th of February, and before the doctor's death, C. Merwin Turner had been authorized to deal with this note as a live note and enforce a payment, instead of enforcing a forfeiture of the contract, and thereby waiving the forfeiture in behalf of the company."

The plaintiff in error further contends that it is difficult to understand how an absolute waiver of a forfeiture can be

inferred from the letters of February 16th and March 11th; that both of the letters were written after the forfeiture had occurred, and the latter one in fact after the death of the insured. So far as the letter of February 16th is concerned, written concededly after the due day of the note, it has as much force, legally, in effecting a waiver of forfeiture as if written before that day. To quote again from Justice Bradley, in *Insurance Company* v. *Norton, supra:* "In either case the effect of the legal indulgence is this—the company says to the insured, pay your note by such a time and your policy shall not be forfeited. If the agreement be made after the note matures, such agreement is itself a recognition on the company's part of the continued existence of the policy, and consequently of its election to waive the forfeiture.'"

The point was further taken by the plaintiff in error, under the first assignment of error, "that there was no evidence of a legal tender of the premium due on the policy," and consequently the offer to pay the note by Mr. Graham on March 14th, and the tender through the Western Union Telegraph Company, at the home office, on March 15th, would not avail, for the reason that the moneys tendered did not represent the amount then due, but was the sum due for principal and interest on February 15th, thirty days before the tender was made, and that as the interest was not included to the date of the tender the company was under no obligation to accept a part of the debt.

It is questionable whether a tender of the unpaid premium was at all necessary after the rights of the parties had become fixed by the death of the insured, especially as the policy itself provides for offsetting the unpaid premiums against the amount due from the company on the policy. But we have not found it important to determine this point. If, as was suggested at the argument, the fourth clause of the policy means to say that non-payment of premiums, or notes given therefor, works a forfeiture, it is difficult to perceive why it should not be held that the fifth clause of the policy, entitled "grace in payment of premiums," makes no distinction between the grace given on failure to pay premiums and the non-payment of a note given therefor.

The amount due in accordance with the letter of March 11th was tendered to the defendant within the period of grace —thirty days—prescribed by the fifth clause aforesaid. On both occasions, when made, it was refused—the defendant refused to accept the amount tendered under any circumstances.

Where a tender is refused, not on the ground that the amount is too small, but on some other ground, the objection to the deficiency is waived. 28 *Am. & Eng. Encycl. L.* (*2d ed.*) 18; *Lambert* v. *Miller,* 11 *Stew. Eq.* 117.

Had the objection to the tender been put on the ground that the amount was too small, there would be some justification for the claim now made by the plaintiff in error that it was under no obligation to accept a part of the debt. But this ground was not taken at all; the company waived this objection when it placed its refusal of the tender on the grounds of denial of liability and a refusal to accept the amount tendered.

The other assignments of error were not pressed at the argument and discussed then only so far as they were involved in the consideration of the assignment based upon the refusal to nonsuit, and no opinion is expressed upon the question whether the defendants below were entitled to a verdict in their favor as a matter of law on the construction of the policy and note.

In my opinion, the motion to nonsuit was properly overruled and the case submitted to the jury. The judgment below should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, DIXON, GARRISON, GARRETSON, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN. 9.

*For reversal*—None.