Ferne B. Eike, Plaintiff-Appellee, v. Central National Life Insurance Company, an Illinois Corporation, Defendant-Appellant.

Gen. No. 69–134.

Third District.

September 11, 1970.

Robert H. Reck, of Mendota, for appellant.

Jack Trager, of Ottawa, for appellee.

ALLOY, J.

Defendant Central National Life Insurance Company appeals from a judgment of the Circuit Court of LaSalle County based upon a claim for indemnity for loss of life under a policy issued by the defendant-company to the husband of plaintiff, Ferne B. Eike.

The record discloses that Marshall J. Eike, plaintiff's deceased husband, purchased a health and accident insurance policy from defendant Central National Life In-

surance Company in September of 1952. The premiums were payable upon the policy annually on the anniversary date of the policy (September 5). There was a 30-day grace period in the policy. In the years 1953, 1954, 1955, 1956, 1957, 1958, and 1960 the premium was paid after September 5 but within the 30-day grace period. The September 5, 1961 premium was not paid within the 30-day grace period, and the policy lapsed. Thereafter, a new application was made by Eike and the policy was reinstated on November 1, 1961. From 1961, the anniversary date of the policy was November 1 of each year. The decedent, Mr. Eike, continued to pay on the policy through 1966 and all payments except one were made after November 1, but before the end of the 30-day grace period. The payment due November 1, 1967, was not made within the 30-day grace period.

The policy contained a provision that if default was made in the payment of the premium on the policy subsequent acceptance of the premium by the company or any of its duly authorized agents would reinstate the policy only to cover accidental injury thereafter sustained and for such sickness as may begin more than ten days after the date of such acceptance. Under the terms of Ill Rev Stats, c 73, § 969.5 (containing a provision applicable to the policy at the times under consideration), the statute provides that if any renewal premium is not paid within the time granted the insured for payment, subsequent acceptance of the premium by the insurer or any agent "without requiring in connection therewith an application for reinstatement, shall reinstate the policy."

Sometime before December 6, 1967, the Levinson Insurance Agency was notified by defendant-company that the Eike policy had lapsed and that the agency should contact Mr. Eike relative to a possible renewal. Mr. Eike did not contact Levinson and had no knowledge that the agency had been notified of the lapse until Edward

30

Levinson had called at the Eike residence on December 6, 1967. Levinson discussed the reinstatement of the policy with Mr. and Mrs. Eike, and Mr. Eike expressed a desire to renew the policy. Levinson had a reinstatement form with someone else's name on it and he modified it by writing in Mr. Eike's name. Levinson asked about Mr. Eike's health, but did not fill out the portion of the application for reinstatement which dealt with medical history. Mr. Eike then read the application and signed it, wrote out a check to the company for $79 for one year's premium, and Levinson took the application and check and mailed it about an hour after leaving Mr. Eike. Mrs. Eike testified at the trial that Levinson told her and Mr. Eike on December 6, 1967, that the policy was reinstated as of that date. Levinson testified that he did not represent to Mr. Eike that the policy was reinstated on December 6, 1967, when he took the application and the check for $79. No receipt was left with Mr. Eike when the application was taken by Levinson on December 6, 1967.

On December 11, 1967, the application form which Levinson had completed and Mr. Eike had signed was returned by the company to Mr. Eike with the request that he answer the medical questions. This was done and the application was mailed back to the company on December 12. Mr. Eike was accidentally killed on December 14, 1967. The defendant-company, after being notified of the death of Mr. Eike, wrote Mrs. Eike and stated that the policy was not in force on December 14, 1967, the date upon which Mr. Eike was killed. It was shown at the hearing, by testimony of a company executive, that the insurance company, in handling reinstatement applications, checks the statements with doctors or hospitals. The Eike application bore the handwritten notation "claims checked o. k." which was a notation made by an employee of defendant insurance company that the check had been made on Mr. Eike. The company

31

records show that the application was processed and Mr. Eike's check was deposited on December 18, 1967, which was a period of four days after Mr. Eike was killed. The company had no record of when it received the Eike application the second time.

The policy under consideration was in the principal sum of $2,500 and a part of the policy provided that after the first year's premium had been paid, "each annual renewal premium paid in advance on this policy shall add 10% of the amount payable for loss of life." The court found in favor of plaintiff and held that the policy was in force at the date of the death of Mr. Eike. The court also awarded plaintiff an additional $2,500 on the annual increase provision, and likewise awarded plaintiff $1,000 in attorney's fees pursuant to Ill Rev Stats, c 73, § 767. Judgment was entered for $5,000 on the policy, plus the $1,000 in attorney's fees referred to.

█ The first issue for consideration was whether Edward Levinson was an agent of Central National Life Insurance Company pursuant to either express or implied authority. The record discloses that defendant-company first contacted the Levinson Agency when the Eike premium was past due. Until Levinson talked with him, Mr. Eike did not know that the Levinson Agency had been contacted in this matter. The defendant-company, therefore, set the whole process of renewal in motion. There was evidence from Mrs. Eike that when Mr. Eike signed the application he was advised by Mr. Levinson, when he left with the check and the application, that the policy had been reinstated as of that time. Under such facts, the trial court was justified in finding that Edward Levinson was the agent of defendant insurance company. In Moone v. Commercial Cas. Ins. Co., 350 Ill App 328, 112 NE2d 626, an attorney called on an agency to obtain coverage under a group bar association health policy. A Mr. Hughes who had an office in the insurance company building rent-free, and

32

who was often sent out to answer inquiries for the insurance agency, was sent to see the lawyer by the agency. Hughes filled out an application for coverage with the company that sent him out and because of some problems on the application the question arose as to whether Hughes was an agent of the insurance company. While he was a licensed broker and insurance agent he was not licensed specifically as an agent for the insurance company. The trial court held that Hughes was not an agent for the insurance company. The appellate court on appeal, found that such conclusion was contrary to the manifest weight of the evidence and that Hughes was the agent of the insurance company. The court stated in that case (at page 335):

> "Whether he was a broker or agent is determined not by what he is called, but by what he does. Midwest Transfer Co. v. Preferred Acc. Ins. Co., 342 Ill App 231. Whether Hughes was the agent of plaintiff or insurer, so as to charge one or the other with responsibility for the answers in the application, depends upon who first set him in motion, who could control his action, who is to pay him and whose interest was he there to protect."

The court there concluded that defendant-company had set Hughes in motion, just as in the case before us, Central National Life Insurance Company had set Levinson in motion. In the Moone case, the court looked specifically to see whose interest the agent was trying to protect and it concluded he was looking after the insurance company interests, just as Levinson was presumably looking after Central National Life Insurance Company's interest in the instant case. The court in the Moone case stated that it agreed with plaintiff that if Hughes was not expressly authorized to act as agent of the company, the trial court should have found that he was held out as agent of the company and that his ac-

tions under his apparent authority were binding on the insurer.

In the case before us, while the language of the policy was more limiting, the provisions of section 969.5 of chapter 73 of Ill Rev Stats automatically became part of the policy. Under that section, payment to an agent of the company automatically reinstated the policy, unless the agent issued a conditional receipt for the premium tendered. Levinson did not issue such conditional receipt in the cause before us and pursuant to that section, the policy was reinstated. This principle has been sustained in cases in other states (Bousquet v. Transportation Ins. Co., 354 Mass 99, 235 NE2d 807). Defendant has cited other cases in which there was an express condition that the application was not to be effective for the purpose of reinstatement until approved at the home office. No such statement is found in the application in the instant case.

The next question for consideration is whether the maximum increase under the policy for payment of premiums "in advance" was made properly applicable by the trial court. It is noted that the provision is that for each annual premium paid "in advance" on the policy, another 10% is added to the amount payable for loss of life. Defendant-company contends that this phrase means that the premium must be paid prior to the anniversary date of the policy each year in order to add the 10% increase. Plaintiff contends that the payment of the premium each year, being a payment in advance for the coming year, makes the 10% increase applicable regardless of whether such payment is made before the anniversary date or during the grace period. We agree with the contention of plaintiff. Since the language is ambiguous it should be construed liberally in favor of the insured (Van Hulle v. State Farm Ins., 99 Ill App2d 378, 241 NE2d 320; Reiner v. St. Paul Fire & Marine Ins. Co.,

106 Ill App2d 210, 245 NE2d 655). If defendant-company intended that the 10% yearly increase was not to be effective unless the premium was paid prior to the anniversary date, the company should have so provided specifically in the terms of the policy. The use of the phrase "in advance" may have been another means of describing the yearly advance premium due on the policy, and such premium could be paid prior to the anniversary date or during the grace period. The provision might well have been considered an effective means of inducing policyholders to keep policies in force for several years, rather than permitting them to lapse. Thus, a payment at any time during the grace period would still allow the insured the 10% increase and accomplish the company's objective.

 Attorney's fees are to be awarded in actions against insurance companies pursuant to chapter 73 of Ill Rev Stats, § 767, where the conduct of the defendant-company is "vexatious and without reasonable cause." In such case, the court may allow 25% of the amount which is found recoverable by plaintiff, or $1,000. In the case before us, defendant had asserted two defenses to the action. One was that Levinson was not the agent of Central National Life, and the other was that Levinson had no authority to reinstate the policy when he called upon Mr. Eike on December 6, 1967. As stated in Zak v. Fidelity-Phoenix Ins. Co., 34 Ill2d 438, 444, 216 NE2d 113, at page 116, the purpose of the statute is not to allow attorney's fees simply because a defendant-company was unsuccessful in litigation. In the cause before us there were issues and ambiguities to be resolved. On the basis of the record, we believe that the conclusion that the insurance company was guilty of vexatious conduct and acted without reasonable cause was not justified. Accordingly, we find that the allowance of attorney's fees in the sum of $1,000 was improper.

This cause will, therefore, be affirmed as to the judgment for $5,000 and reversed as to the allowance of the $1,000 attorney's fee. This cause is, therefore, remanded to the Circuit Court of LaSalle County with directions to modify the judgment in accordance with the views expressed in this opinion.

Affirmed in part, reversed in part and remanded.

RYAN, P. J. and STOUDER, J., concur.