708 A.2d 419

PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY, A CORPORATION OF THE STATE OF TENNESSEE, PLAINTIFF–RESPONDENT, v. BRUCE A. FEIN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 11, 1998—Decided April 13, 1998.

112

Before Judges SHEBELL, A.A. RODRIGUEZ and COBURN.

*William C. Slattery* argued the cause for appellant (*Agostini and Slattery*, attorneys; *Mr. Slattery*, of counsel and on the brief).

*Edward C. Cerny, III*, argued the cause for respondent (*Lane and Mittendorf*, attorneys; *Mr. Cerny*, of counsel; *Rodman E. Honecker*, on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

Plaintiff, Provident Life and Casualty Insurance Company, sued in the Chancery Division to rescind a disability insurance policy issued to the defendant, Bruce A. Fein; alternatively, Provident sought a declaratory judgment that defendant was not disabled under the terms of the policy. Defendant filed a counterclaim for breach of contract, claiming entitlement to the policy's benefits.

Both parties sought summary judgment on the issue of rescission. Provident prevailed, and defendant filed this appeal. Since we believe Provident was not entitled to rescind the policy, we reverse and remand for trial on the issue of disability.

In 1982, Fein, then a twenty-six-year-old commodities trader, purchased a Provident disability insurance policy. In 1986, Fein accepted Provident's solicitation to increase the monthly benefits from $1,800 to $2,800. The application asked Fein to state his "current annual rate of earned income (net after business expenses, if any)," and he responded by inserting the figure of "$175,000 + ." This application did not inquire about the existence of any other disability policies owned by the applicant.

In June 1988, Fein inadvertently failed to remit a premium payment. In September, Fein's insurance agent notified him of the failure, and on September 6, 1988, Fein mailed a check to Provident for the June and September premiums. Fifteen days later Provident wrote to Fein acknowledging receipt of the check "to place the ... policy back in force effective June 1988."

The policy remained in force and nothing untoward occurred until December 1993 when Fein again inadvertently failed to remit a premium payment due on the nineteenth of the month. Because he had previously made a double premium payment, he had assumed, incorrectly, that the second payment was for December 1993.

On March 15, 1994, Fein's insurance agent notified him of his failure to pay the December premium, and on that very same day he sent Provident a check in the amount of $506.04 covering the payments due December 19, 1993 and March 19, 1994.

At the end of April, Fein's agent called him to advise that Provident required submission of a reinstatement application. During that conversation, the agent questioned Fein about his income, reminding him that in 1986 he had stated on his application that his income was $175,000. Fein responded by telling the agent that his average annual income over the past ten years was

$175,000, and the agent inserted that figure on the application before sending it to Fein for signature and submission to Provident. This application also inquired about other disability policies. Fein responded by listing a "Nat Life" policy which provided benefits of $4,000 per month.

On May 2, 1994, according to Fein, he signed the reinstatement application and mailed it to Provident. However, the application bears a date-stamp indicating that it was received by Provident "June 02."

On June 2, 1994, Provident mailed a letter to Fein which said:

Your payment of $506.04 has been received in our Home Office, along with your application for reinstatement of your lapsed policy.

You may consider this letter as a conditional receipt for the premium tendered. We have accepted your payment subject to the following condition:

Approval of your application for reinstatement under the underwriting rules and practices of the company in effect for the type of policy for which reinstatement is requested.

You will then be notified by the company of its decision as to your reinstatement application. If denied, your payment will be refunded to you in a timely manner. If accepted, you will be notified of any additional premium which may then be due.

On June 6, 1994, Provident deposited Fein's check and mailed a letter to Fein which said:

We are pleased to inform you that we have reinstated the above captioned policy effective June 6, 1994.

Please understand that we are reinstating this policy based on the representation made in the enclosed reinstatement application which should be attached to your policy. Loss from injuries is covered only if they are sustained after the date of reinstatement; loss from sickness starting more than 10 days after the date of reinstatement is covered.

On February 20, 1996, Fein, still employed as a commodities trader, filed a disability claim under the policy based upon various physical and emotional ailments which, according to him, had begun in February 1995 and had worsened to the point that he was no longer capable of performing his job. He indicated on the application that his "Current year-to-date" income was $47,000. He further stated that he had disability polices with two other insurance companies, National Life and CNA. The May 2, 1994, reinstatement application had listed the National Life policy,

which provided monthly benefits of $4,000, but not the policy issued by CNA. The CNA insurance was a group disability policy purchased December 31, 1993, by the New York Mercantile Exchange, where Fein worked. It provided monthly benefits of $6,000.

Provident rejected Fein's claim for disability benefits on two grounds: the failure to list the CNA disability policy on the reinstatement application and the representation of a level of income which was far in excess of his actual current income. Based upon Provident's certifications, we will accept for purposes of this opinion that it would not have voluntarily reinstated the policy had it been informed of the CNA policy and the true status of Fein's income. Provident's reasoning in this regard is straightforward. In determining whether an applicant may be approved for a particular level of benefits, the goal is to avoid undue encouragement of disability claims by the grant of benefits which approach or exceed the applicant's usual earnings. According to Provident, annual earnings of $175,000 would support a maximum allowable monthly benefit of $9,750, a figure already exceeded by the other two policies, which together provided a monthly benefit of $10,000. Since the applicant's current income in 1994 was less than $175,000, Provident would not have reinstated its policy.

In rendering judgment for Provident, the Chancery Division ruled that the income statement and the omission of the CNA policy in the reinstatement application constituted equitable fraud justifying rescission. In addition to assuming that Provident would not have voluntarily reinstated the policy, we will also assume for purposes of this opinion that those defects in Fein's reinstatement application constituted equitable fraud. However, we note that would be true with respect to the CNA policy only if Fein knew of its existence when he submitted the application. *See, e.g., Bonnco Petrol, Inc. v. Epstein,* 115 *N.J.* 599, 602–11, 560 *A.*2d 655 (1989); *Jewish Ctr. of Sussex County v. Whale,* 86 *N.J.* 619, 622–26, 432 *A.*2d 521 (1981). The record tends to support Fein's contention that he did not become aware of this policy until

some four or five months after he filed the reinstatement application.

After reaching the conclusion that equitable fraud was present as a matter of law, the court rejected these contentions of Fein: (1) the reinstatement application was inadmissible because it was not attached to the policy as required by *N.J.S.A.* 17B:24–3a; (2) the reinstatement application was irrelevant because the policy had been reinstated by operation of law pursuant to *N.J.S.A.* 17B:26–7; and (3) the suit was filed more than two years after the policy was reinstated and was thus violative of the "incontestability clause" contained in the policy, as modified by *N.J.S.A.* 17B:26–34.

Although we endorse the rejection of the first contention, *see Massachusetts Mut. Life Ins. Co. v. Manzo,* 214 *N.J.Super.* 385, 388–90, 519 *A.*2d 898 (App.Div.1986) and *N.J.S.A.* 17B:24–3b, the point is irrelevant in light of our conclusion that the Chancery Division erred with respect to the second and third contentions, under either of which Fein was entitled to prevail on his cross-motion for partial summary judgment dismissing the claim for rescission.

## I.

The first question we address is whether the insurance policy was reinstated according to the terms of the policy and as a matter of law before Fein acquiesced to Provident's demand that he file an application for reinstatement. The basis of Fein's argument is *N.J.S.A.* 17B:26–7 which requires incorporation of the following terms for reinstatement in any individual health insurance policy:

Reinstatement: If any renewal premium be not paid within the time granted the insured for payment, a subsequent acceptance of premium by the insurer or by any agent duly authorized by the insurer to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate the policy; *provided, however,* that if the insurer or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, the policy will be reinstated upon approval of such application by the insurer or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt

unless the insurer has previously notified the insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than 10 days after such date. In all other respects the insured and insurer shall have the same rights thereunder as they had under the policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement. Any premium accepted in connection with a reinstatement shall be applied to a period for which premium has not been previously paid, but not to any period more than 60 days prior to the date of reinstatement.

(The last sentence of the above provision may be omitted from any policy which the insured has the right to continue in force subject to its terms by the timely payment of premiums a. until at least age 50 or, b. in the case of a policy issued after age 44, for at least 5 years from its date of issue.)

[*N.J.S.A.* 17B:26–7 (emphasis added).]

For convenience, we restate the critical facts on this point. As soon as Fein was advised the policy had lapsed because of his inadvertent failure to remit a renewal premium, he mailed the premium to Provident. The mailing occurred on March 15. Towards the end of April, Provident advised Fein's insurance agent that a reinstatement application would be required, and the agent so advised Fein. Fein sent the application to Provident by letter dated May 2. Provident's records indicate the application as having been received on June 2. That same day, Provident mailed a conditional receipt to Fein, followed up by a reinstatement letter mailed on June 6. Thus, from the time Provident received Fein's check, presumably on or about March 18, allowing three days for mailing, it took Provident almost one-and-a-half months to request a reinstatement application and over two-and-a-half months to issue a conditional receipt.

Provident contends that its conduct adhered to the requirements of *N.J.S.A.* 17B:26–7 because it asked for a reinstatement application and issued a conditional receipt. That argument assumes the statute gives the insurance company an unlimited time after receipt of an overdue premium to decide whether and on what terms it will reinstate its policy. We disagree. Although the courts of this state have not considered the issue, other courts have rejected that position. Construing reinstatement statutes identical, or virtually identical, to New Jersey's, these courts have

held that after receiving an overdue premium the insurer must request a reinstatement application and issue the conditional receipt for the premium either immediately or, in some cases, within a reasonable time; and the failure to meet that obligation results in automatic reinstatement of the policy. *See, e.g., Bousquet v. Transportation Ins. Co.,* 354 *Mass.* 152, 235 *N.E.*2d 807 (1968); *Eike v. Central Nat'l Life Ins. Co.,* 129 *Ill.App.*2d 28, 262 *N.E.*2d 338 (1970); *McMillon v. Old Republic Life Ins. Co.,* 33 *Ill.App.*3d 658, 342 *N.E.*2d 246 (1975); *Ryman v. American Nat'l Ins. Co.,* 5 *Cal.*3d 620, 96 *Cal.Rptr.* 728, 488 *P.*2d 32 (1971); *O'Donovan v. Bankers Life and Cas. Co.,* 305 *So.*2d 643 (La.Ct. App.1974); *Price v. Horace Mann Life Ins. Co.,* 590 *S.W.*2d 644 (Tex.Civ.App.1979).

In *Bousquet, supra,* the Supreme Judicial Court of Massachusetts interpreted a statute identical to ours to afford protection to an insured whose policy had lapsed due to nonpayment of a premium because of the company's failure to issue a "conditional receipt" when it subsequently received the late payment along with an application for reinstatement. 235 *N.E.*2d at 808. On becoming aware of the lapse, the insured presented a check to the insurance company's agent along with an application for reinstatement. *Ibid.* The insurance company did not issue a letter reinstating the policy until twenty-two days had passed. *Ibid.* In the meantime, the insured was involved in an accident warranting coverage under the policy if it was in effect. *Ibid.* The court had this to say:

> The [first clause preceding the word "provided" in the] current statute ... substantially retains the prior law. In the proviso ... however, the Legislature spells out the conditions precedent which the insurer must meet to avoid waiver of lapse (or automatic reinstatement) of the policy by the acceptance of premium by a duly authorized agent. The insurer must require an application for reinstatement and issue a conditional receipt for the premium tendered. The insurer here did not meet the latter condition; no conditional receipt was issued to Alfred. The acceptance of the renewal premium is therefore governed by ... [the first clause preceding the word "provided"]. The policy was reinstated. To hold otherwise would condone an easy evasion of the statute by the insurer. Despite its failure to comply in part with [the] proviso ... (not issuing a conditional receipt), it would nullify ... [the first clause preceding the word "provided"] (by furnishing an

application to be signed by him) and, in consequence, substitute a method of reinstatement not authorized by the statute, namely the terms of its application alone. It is our opinion that the application signed by [the insured], without its counterpart receipt being issued to him, cannot be used to override the reinstatement language of the policy which the Legislature has prescribed. *See Rosenthal v. Monarch Life Ins. Co.*, 290 *Mass.* 254, 257–258, 195 *N.E.* 339. The case arises not, as argued, because the statute is ambiguous nor because the statute does not encompass the situation which has developed. It arises because the insurer has not complied with the statute.

The Legislature apparently felt that the issuance of a conditional receipt was a necessary safeguard for the protection of the insured when the insurer required an application for reinstatement. The language of an application on a form provided and prepared for his signature by the insurer and his agent might not be brought home to the insured, especially where after delivery to the agent the insured does not see it again. The possession of the conditional receipt by the insured, however, may serve immediately as a warning and thereafter as a reminder that he is not yet insured. With that knowledge he might obtain temporary insurance or urge upon the agent the need for speedy action for reinstatement (here the forwarding of the application was two weeks after the signing) or he might change his plans, such as a trip, until reinstatement is effected. In any event, it is not our province to alter a requirement established by the Legislature.

[*Id.*, 235 N.E.2d at 809.]

In *Eike, supra,* Illinois' intermediate appellate court, following the construction of the statute expressed in *Bousquet,* held the insurance company liable on the policy for failure to issue a conditional receipt when the late premium was tendered. 262 *N.E.*2d at 341. In a later decision, another panel of the same court, deviating somewhat from *Eike*'s approach to the statute, held that an insurance company which receives a premium payment on a lapsed policy is entitled to a reasonable time to decide if it wishes to reinstate the policy based simply on the overdue payment without requiring a reinstatement application. *McMillon, supra,* 342 *N.E.*2d at 248–49. The court further held that the company's action in returning the premium within five days was reasonable and constituted a nonacceptance under the statute. *Ibid.* In so holding, it noted with approval cases where the retention of overdue premium checks for twenty-eight and forty-six days was considered to be unreasonable, resulting in the receipt of the check being deemed an acceptance and reinstatement of the policy. *Ibid.*

In *Ryman, supra,* the Supreme Court of California considered a reinstatement statute identical to ours in all pertinent respects. When the insureds' overdue premium check was received, the company failed to immediately issue a conditional receipt. 96 *Cal.Rptr.* at 730–31, 488 *P.*2d at 34–35. Six days passed before the company notified the insureds in writing that the policy had lapsed and a new application would be required before the policy could be considered for reinstatement. *Id.* at 731, 488 *P.*2d at 35. The court held that under the terms of the policy, which contained the relevant statutory provisions, the policy was reinstated on the date the check was received and accepted:

> Although the company was apparently aware that the premium payment was late, since it credited the payment to its "suspense file" rather than to the insureds' regular account, the company did not notify the insureds at this time that it would require them to complete an application for reinstatement. Nor did the insurer "issue a conditional receipt for the premium tendered." In light of the company's past practice, this retention and deposit of the check without qualification constituted an "acceptance" of the premium and, as such, under the explicit terms of the policy, reinstated plaintiffs' coverage.
>
> [*Id.* at 733, 488 *P.*2d at 37 (citations omitted).]

The court then addressed and rejected the company's claim that it was entitled to retain the premium for a reasonable period of time while it decided whether to accept the payment unconditionally or to require an application for reinstatement. The court said:

> The company apparently bases this argument on the "realities" of the nature of large, modern insurance companies and the consequent limitation on the insurer's ability to give immediate, individual attention to each premium payment it receives. The short answer to defendant's contention is, of course, that the reinstatement procedure incorporated in the policy itself contains no provision for such retention of a tendered premium prior to a decision whether or not to require evidence of insurability through an application for reinstatement.
>
> The accelerating expansion of insurance companies and the proliferation of specialized departments is a completely voluntary development, undertaken by insurers for their own benefit. If an insurer elects to expand its operations to a stage at which it cannot feasibly identify a late payment and issue a conditional receipt before retaining a premium, certainly the *insured* cannot reasonably be required to shoulder the resulting consequences.
>
> Although the insurer urges us to read into the reinstatement provision authorization for its temporary retention of premiums in the above manner, long recognized principles of interpretation counsel against any extrapolation of a policy's literal terms which might increase the risk of a forfeiture by an insured. As we declared

in *Page v. Washington Mutual Life Ass'n* (1942) 20 Cal.2d 234, 239, 125 P.2d 20, 23: "Forfeitures, particularly in insurance contracts, are not favored. [citation] And if reasonably possible in light of the circumstances, the courts will determine that a forfeiture has not occurred or that a waiver or estoppel exists. [citations]"
[*Id.* at 734, 488 *P.2d* at 38 (footnote omitted).]

In *O'Donovan, supra,* Louisiana's intermediate appellate court construed its essentially identical reinstatement statute as permitting the insurance company a reasonable period of time to demand reapplication and issue a conditional receipt to avoid automatic reinstatement of the policy as a result of an overdue premium payment. 305 *So.*2d at 646. However, the court held that a thirteen-day delay by the insurance company in issuing the conditional receipt was unreasonable. *Ibid.*

In *Price, supra,* the Court of Civil Appeals of Texas, confronted by the same statutory language, held that the insurance company was entitled to a reasonable period of time after receipt of an overdue premium to decide whether it wanted a reinstatement application from the insured as a condition of reinstating the lapsed policy. 590 *S.W.*2d at 645–46. Thirteen days passed before the company asked for the application. The court had this to say:

"Reasonable time" is a relative term. It never means an indulgence in unnecessary delay; instead, it denotes such promptitude as the circumstances will allow for the action called for by the contract. Ordinarily, what is a "reasonable time" under the circumstances of a particular case is a mixed question of law and fact and should be submitted to the trier of the facts. *See American Guardian Insurance Company v. Rutledge,* 404 *S.W.*2d 847, 851 (Tex.Civ.App.—Tyler 1966, no writ) and cases there cited.

The principle becomes operative under the state of this summary judgment record. At the time Mrs. Price's remittance was received by Horace Mann, her policy had lapsed. Upon receipt of the late payment, Horace Mann had the right to accept it in reinstatement of the policy or to require an application for reinstatement for its approval before the policy was reinstated. Horace Mann alone controlled the course of action and, absent a time fixed in the policy, the law dictates that Horace Mann opt for one course of action or the other within a reasonable time. Thirteen days after Mrs. Price's payment was received, Horace Mann solicited an application for reinstatement. If this action was taken within a reasonable time, Horace Mann has no liability under the lapsed policy; if otherwise, Horace Mann waived the requirement of a reinstatement application and its waiver constituted an acceptance of the late payment for reinstatement of the policy.

> The question, then is:  does the summary judgment proof conclusively establish whether Horace Mann opted for the reinstatement application within a reasonable time or after an unreasonable time?  The answer is derived from what the record shows Horace Mann did.  The record, however, merely establishes that Horace Mann deposited Mrs. Price's payment in its suspense account and thirteen days later notified her of the lapse and solicited the application for reinstatement.  Neither occurrence, singularly or collectively, conclusively establishes the reasonable time issue.
>
> [*Id.* at 646–47.]

With this background, we approach the issue of statutory construction.  In our view, the meaning of the critical language contained in the first sentence of *N.J.S.A.* 17B:26–7 is clear.  When an insurance company receives an overdue renewal premium the receipt constitutes acceptance and the policy is thereby reinstated as of the date of receipt, unless the premium is returned promptly or the company, "in connection" with receipt of the premium, requests a reinstatement application and at the same time issues to the insured a "conditional receipt."  If the company has asked for the application and issued the conditional receipt in a timely manner, it has forty-five days from the date of· the conditional receipt to notify the insured that it is accepting or rejecting reinstatement.  If the forty-five days pass without a notice of rejection being issued, the policy is automatically reinstated on the forty-fifth day.

The key phrase in this statute is, "in connection therewith." The evident purpose of this phrase is to provide an insured with the earliest reasonable notice that the insurance company is not simply accepting the overdue premium payment and reinstating the policy as a matter of course.  The phrase implies that the receipt of the payment and the issuance of the conditional receipt will be linked together.  Obviously, the insurance company cannot be expected to act instantaneously.  However, the phrase, read in conjunction with the proviso, clearly intends that in asking for an application, the insurance company must simultaneously issue the conditional receipt, and these two joint steps must be done promptly in relation to acceptance of the late premium payment.

In saying that the insurance company must act "promptly" we are not holding that the conditional receipt necessarily must be issued at the same precise time or even on the same day the company receives the late payment. However, the amount of time required for the simple act of sending the conditional receipt with the reinstatement application should not be measured against the time an insurance company might desire for investigation of the matter. That approach would be inconsistent with the cases discussed above and with the general principle, accepted in this state, that "[a]n insured cannot be penalized for an insurance company's internal procedures." *Meier v. New Jersey Life Ins. Co.*, 101 *N.J.* 597, 609, 503 *A*.2d 862 (1986). In this context, where the purpose of the statute is to provide an insured with the earliest possible notice that he or she might have to seek insurance elsewhere, the concept of a reasonable time should be measured in relation to the time required to prepare and transmit the necessary paperwork.

In *Ryman, supra,* the California Supreme Court found that six days was unreasonable. 96 *Cal.Rptr.* at 731, 734, 488 *P*.2d at 35, 38. On the other hand, in *McMillon, supra,* five days was considered reasonable, but cases involving twenty-eight and forty-six days were considered as examples of unreasonable delays. 342 *N.E.*2d at 248–49. In *O'Donovan, supra,* 305 *So*.2d at 646, a thirteen-day delay was found to be unreasonable, although in *Price, supra,* 590 *S.W*.2d at 646–47, a thirteen-day delay was considered as raising a mixed question of law and fact which should be resolved by the trier of the facts. In *Bohles v. Prudential Ins. Co. of Am.,* 84 *N.J.L.* 315, 86 *A*. 438 (E. & A.1913), a case decided before enactment of the statutes involved here, the court held that an unconditional acceptance of a premium constitutes a waiver of the default. *Id.* at 317, 86 *A*. 438. However, the existence of waiver was held to be a fact issue since the company retained the premium for a period of three weeks before returning it. *Ibid.*

■ We need not for purposes of resolving this case concern ourselves with establishing the minimum time in which an insurance company must act to avoid automatic reinstatement. Depending on the circumstances, a brief delay may evidence a nonwaiver as a matter of law or it may present a mixed question of law and fact for the trier of the facts. For now, it is enough to say that as a matter of law the delay in this case—over two and one-half months from the time of receipt of the overdue premium until the time of issuance of the conditional receipt—was unreasonable.

Our view in this regard is fortified by the record in this case. According to Provident, it mailed the conditional receipt in response to and on the same day it received Fein's application for reinstatement. Only four days later, Provident issued its reinstatement letter. Given that demonstrated capacity to respond the same day or within a few days of action by Fein, we fail to see how Provident can reasonably argue that it needed two and one-half months to react to its receipt of Fein's late premium payment.

Further support for our position may be gleaned from that portion of *N.J.S.A.* 17B:26–7 which provides that a failure of the insurance company to act on a reinstatement application within forty-five days results in automatic reinstatement of the policy. The selection of a forty-five-day period as a reasonable time in that context certainly suggests that taking two and one-half months to issue a conditional receipt would be unreasonable, especially since in the former situation the insured knows that he is uninsured while in the latter he has a right to assume, as time passes, that his insurance is in place.

Provident's acceptance of the premium in the circumstances of this case resulted in a waiver of its right to demand a new application as a condition of reinstatement.

In *Bruni v. Prudential Ins. Co. of Am.,* 51 *N.J.* 408, 241 *A.2d* 449 (1968), the Court adopted the dissenting opinion of Judge Carton in the Appellate Division, 100 *N.J.Super.* 154, 241 *A.2d* 455 (App.Div.1967), wherein the following pertinent views were expressed:

It is elementary that an insurer may waive any provision for its benefit and may waive any representation, warranty, condition or limitation in the policy upon which it would otherwise be entitled to rely. Since provisions for payment of premiums and reinstatement are considered to be for the benefit of the insurer, they may likewise be the subject of waiver, thus rendering the insurance company liable for loss occurring during a time when, according to its contract, it would be relieved of liability. See *Graham v. Security Mutual Life Insurance Company,* 72 *N.J.L.* 298 [62 *A.* 681] ( E. & A.1905); *16 J.A. Appleman, Insurance Law and Practice* [hereinafter cited as *Appleman* ], § 9083 (1944), and see *Annot.,* 7 *A.L.R.*3d 414 (1966). *Cf. Ciccone v. The Colonial Life Insurance Company,* 110 *N.J.L.* 276 [164 *A.* 444] (E. & A.1933) holding that an insurer which refused the tender of a premium payment because the assured had failed to make timely payment and on this basis declared the policy had lapsed, was precluded in a later action on the policy from urging it had lapsed on another ground not asserted in declaring the default.

A waiver of a forfeiture clause is predicated upon the acts or conduct of the insurer with knowledge of a breach tending to show a recognition of the policy, or an intent to relinquish the right to declare a forfeiture for the known breach. See 16 *Appleman,* § 9084. Because the courts are loathe to enforce forfeitures, it is always open to the assured to show a waiver of policy provisions when the conduct of the insurer gives reasonable ground to the assured, as a layman unversed in insurance provisions, to believe that such a forfeiture will not be incurred and the assured relies thereon to his prejudice. See *Allen v. Metropolitan Life Insurance Company,* 44 *N.J.* 294, 305, 208 *A.*2d 638 (1965).

[100 *N.J.Super.* at 163–64, 241 *A.*2d 455 (Carton, J., dissenting).]

We should also note that Fein's acquiescence in Provident's demand that he file an application for reinstatement did not estop him from showing that the policy had already been reinstated as a matter of law. *Bankers Nat. Life Ins. Co. v. Cooper,* 111 *N.J.Super.* 264, 272, 268 *A.*2d 78 (Ch.1970).

Thus, based on the out-of-state cases to which we have referred, our own cases, and a sensible reading of the statute, we find that this insurance policy was automatically reinstated by *N.J.S.A.* 17B:26–7 on the date Fein's check reached the company, which was on or about March 18, 1994.

## II.

We now turn to Fein's contention, with which we also agree, that Provident's action for rescission, filed on May 31, 1996, was barred by the two-year incontestability clause because the

policy was reinstated as a matter of law on or about March 18, 1994.

■ The policy's incontestability clause, which is in accord with the mandate of *N.J.S.A.* 17B:26–5a(2), provides the following:

INCONTESTABLE: (a) After this policy has been in force for a period of 2 years during your lifetime, it shall become incontestable as to the statements contained in the application.

Although not included within the policy, the following provision is incorporated therein as a matter of law:

A policy provision complying with the requirements of section 17B:26–5, relating to a time limit on certain defenses, shall also apply to any reinstatement of the policy except that the period of time established by such provision shall commence with the date of the reinstatement instead of the date of issue of the policy.
[*N.J.S.A.* 17B:26–34.]

We recognize that the concluding phrase of this statute might be seen as creating an ambiguity in the context of this case. Under *N.J.S.A.* 17B:26–5 [1] an insurance company may select one

---

[1] There shall be a provision as follows:

Time limit on certain defenses:
a. After 2 years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such 2-year period.
(1) The foregoing policy provision shall not be so construed as to affect any legal requirement for avoidance of a policy or denial of a claim during such initial 2-year period, nor to limit the application of sections 17B:26–17 to 17B:26–21, inclusive, in the event of misstatement with respect to age or occupation or other insurance.
(2) A policy which the insured has the right to continue in force subject to its terms by the timely payment of premium (a) until at least age 50 or, (b) in the case of a policy issued after age 44, for at least 5 years from its date of issue, may contain in lieu of the foregoing the following provision (from which the clause in parentheses may be omitted at the insurer's option) under the caption "INCONTESTABLE":
After this policy has been in force for a period of 2 years during the lifetime of the insured, (excluding any period during which the insured is disabled) it shall become incontestable as to the statements contained in the application.

of two versions set forth in the statute as the incontestability clause to be included within its policy. The first speaks in terms of two years from the "date of issue," and the second in terms of being "in force for a period of 2 years during the lifetime of the insured...." Since the concluding clause of *N.J.S.A.* 17B:26–34 calls for use of the "date of the reinstatement instead of the date of issue of the policy," it might be argued that this section is not relevant to the second form of incontestability clause which uses the "in force" phraseology. But that would be a strained and unnecessary reading, one completely at odds with the purpose of the statute. The focus of this statute is on the commencement of the two-year period rather than on the other distinctions between these two incontestability clauses. Seen in this light, the concluding clause is superfluous. In a similar context in *Johnson v. Metro. Life Ins. Co.*, 53 *N.J.* 423, 251 *A.2d* 257 (1969), the Supreme Court had little problem in ignoring the superfluous provision:

> We appreciate that this interpretation makes superfluous the concluding phrase "commencing after the expiration of such two-year period." Indeed, it is the addition of that phrase which obscures the provision's meaning, as is apparent when the provision is read without it. But, as we have said, to permit that phrase to control, so that the provision would deal with a disability commencing after two years and with nothing else, would render meaningless the first portion of the provision and the time limitation it contains. We must remember that the purpose of a clause placing a time limit on challenges to the insurance application is to give security to the policyholder, and sensibly that purpose is achieved by measuring the period of contest from the date of the issuance of the policy rather than from the date when a disability happens to occur. To permit the tailend phrase to control the entire provision would thus run against the sense of an incontestable clause.

> No matter how the total provision is approached, there is an obscurity generated by the final phrase. Obviously the draftsmen were not of a single mind. They settled upon an ambiguity, and the best a court can do is to resolve that ambiguity

---

b. No claim for loss incurred or disability (as defined in the policy) commencing after 2 years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

in a way which will serve the implicit promise to give some security to the insured while dealing fairly also with the insurer.

[*Id.* at 441–42, 251 *A.*2d 257.]

Under part *I* of this opinion, we rejected Provident's argument that the policy was not reinstated until it issued its letter of reinstatement on June 6, 1994, and we held that the policy was reinstated pursuant to *N.J.S.A.* 17B:26–7 when the late premium payment was received, which was on or about March 18, 1994. That statute clearly defines reinstatement as an event which may occur as a result of an insurance company's affirmative action or its failure to act. Thus, when *N.J.S.A.* 17B:26–34 refers to "any reinstatement of the policy," we take it to mean both reinstatements initiated by the insurance company as well as reinstatements required by law as a result of inaction by the company. The filing date of Provident's complaint, May 31, 1996, is obviously more than two years after the reinstatement date mandated by law. Consequently, the action for rescission is barred by the two-year statutory limitation.

Reversed and remanded for further proceedings.